

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 24, 1964

Honorable Jerry Sadler          Opinion No. C-352
Commissioner
General Land Office          Re:  Whether the Veterans' Land
Austin, Texas                    Board may use any funds from
                                 the Veterans' Land Fund after
                                 December 1, 1965, to pay the
                                 purchase price on lands they
                                 agreed to purchase prior to
Dear Mr. Sadler:                 December 1, 1965.

    Your recent letter to this office presents the question
as to whether the Veterans' Land Board may, prior to December
1, 1965, enter into a commitment for the purchase of land
which, due to the details of a title examination and other
closing matters, defers the payment of the purchase price
subsequent to December 1, 1965.

    Your written supplemental information also states
that:

    "When the veteran's contract and other
papers are mailed to him for the purpose of
signing the contract with the seller, the
Veterans' Land Board, at that time, is able
to accept the assignment of his contract and
process his application knowing that, when
the contract is assigned to the Board, there
is money available to handle that particular
transaction.

    "The Board makes this determination based
on experience of past percentages of contracts
received back after execution by the veteran
and seller and those originally mailed out to
the veterans and not returned.  We receive
approximately 20% of the contracts properly
executed by the seller and the veteran and
assigned to the Board out of 100% that are
mailed out.  Eighty per cent of the veterans
are not able to find the land that they want,
or, for some other reason, do not execute
their contract with the seller, thereby en-
abling them to participate in the Program.

-1667-

"After the description of the land, the
veteran's qualifications and other require-
ments have been properly met, the land is
appraised by the Veterans' Land Board ap-
praiser. Upon receipt of the appraisal,
the file is properly reviewed by numerous
people within the Veterans' Land Board,
including the Commissioner and the Chief
Clerk, and a commitment is issued for the
exact amount of money that will be paid by
the Board for the land."

Article III, Section 49-b, Constitution of the State
of Texas, provides:

". . . The additional bonds herein author-
ized may be sold in such installments as
deemed necessary and advisable by the Vet-
erans' Land Board. All monies received
from the sale of land and for interest on
deferred payments on land purchased with
the proceeds of such additional bonds, shall
be credited to the Veterans' Land Fund for
use in purchasing additional lands to be
sold to Texas veterans, as herein provided,
in like manner as provided for the sale of
lands purchased with the proceeds from the
sales of the bonds provided for herein, for
a period ending December 1, 1965; provided,
however, that so much of such monies as may
be necessary to pay interest on the addi-
tional bonds herein provided for shall be
set aside for that purpose. After December
1, 1965, all monies received by the Veterans'
Land Board from the sale of the lands and
interest on payments, or so much thereof as
may be necessary, shall be set aside for the
retirement of said additional bonds and to pay
interest thereon, and any of such monies not
so needed shall not later than the maturity
date of the last maturing bond be deposited to
the credit of the General Revenue Fund to be
appropriated to such purposes as may be pre-
scribed by law. . . ."

Likewise, Section 9a, Article 5421m, Vernon's Civil
Statutes, provides:

"Each year until December 1, 1965, there
shall be set aside and paid from the Veterans'
Land Fund sufficient moneys to pay interest
and principal due on all bonds theretofore
issued and outstanding. After December 1,
1965, all moneys received by the Veterans'
Land Board under the terms of this Act, or
so much thereof as may be necessary, shall
be set aside and used to pay principal and
interest on bonds then outstanding as they
shall mature. When there is in the Veterans'
Land Fund an amount fully sufficient to pay
all interest on, and principal of, the out-
standing bonds due and to become due there-
after, any moneys in excess of such amount
shall be deposited to the credit of the
General Fund of the State of Texas to be
appropriated to such purposes as may be pre-
scribed by law. . . ."

It is our opinion that a commitment may be made any
time prior to December 1, 1965. Once a commitment has been
made prior to that date, payment of the consideration may
be made upon completion of the final closing details even
if that should occur after December 1, 1965. Where a commit-
ment has been made prior to December 1, 1965, to say that
payment of the consideration could not be made after
December 1, 1965, would be unduly restrictive of the provi-
sion in Article III, Section 49-b that purchases may be made
until that date.

Consequently, it is our opinion, that a commitment
having been made prior to December 1, 1965, payment of the
consideration can be made subsequent to that date.

## SUMMARY

If a commitment to purchase land pursuant
to Article III, Section 49-b, Constitution of
the State of Texas, is entered into prior to
December 1, 1965, payment of the consideration
can be made subsequent to that date.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By
George C. Black, Jr.
Assistant

GCB:afg

-1669-

Honorable Jerry Sadler, page 4 (C-352)


APPROVED:

OPINION COMMITTEE

W. O. Shultz, Chairman
J. C. Davis
Grady Chandler
Pat Bailey
Paul Phy

APPROVED FOR THE ATTORNEY GENERAL
BY: Roger Tyler